Thanks everyone for their patience. The next case for argument is 20-2018 BP America Production Company v. United States. Okay, as I said to the other advocates, when you're at the podium, you're free if you wish to remove your mask, but only at the podium. Ms. Finman? Ms. Finman. You may please report. On behalf of the United States, we ask that this court reverse the judgment of the Court of Federal Claims. The underlying cause of action here is a claim for statutory benefit. So this court is charged with statutory construction of the relevant statute to issue. Can I just interrupt you with a kind of a housekeeping thing? It's curious to me since a lot of people played under the statutory provision, I assume, that has now been or was repealed in 2015. In the statement of related cases, I don't think you cited any. So is this just a one-off, or are there 100 cases waiting in the pipeline based on this? Because so much time has passed and BP was a big player, is this really a one-off, or are there many, many cases waiting behind it? This is the only case in which I'm aware. I think, as Your Honor notes, there has been a significant passage of time. Whether there are any still winding their way through an administrative process, that I can't make a representation to the court one way or the other. But this is the only case that's gotten to court in this fashion. Okay, thank you. So this court's charged with statutory construction. Here, that primary statute issue is FAGRMA, as affected by the FAST Act, which repealed Section 1721H, effective December 2015, and also the General Savings Statute, which the United States has raised in its brief. There is no dispute amongst the parties or the trial court that prior to the FAST Act, FAGRMA created a liability in the United States to overpayment interest, and then that overpayment interest was part and parcel of a larger statutory scheme that provided for the manner of its satisfaction, right? Okay, I understand that. Let me just ask you, in the pre-FAST statutory scheme, am I correct that the government wasn't required to pay back overpayment interest until a two? Simply stated, yes. Okay, so there wasn't any requirement to do it on its own initiative if it didn't know about the overpayment or no one asked about it? No, the ONRR would assist in the calculation efforts. It is a complicated calculation, so there was an interplay back and forth between ONRR and the lessee, but you're right. But if no one asked for an overpayment, the lessee would be credited with that amount, right? The following year or something? Not suespante by ONRR, right? There was a monthly process whereby the lessee would submit its reports as to how much oil and gas it had extracted. So the lessee needs to know, you need to inform the lessee that there's been an overpayment? Yes, typically the lessee was statutorily entitled to calculate on their own, but if the lessee determined that it was too burdensome to do so, ONRR would do the calculation for them, and then there was a series of audits, and so there's an interchange. So in this case, wouldn't any type of deadline, administrative deadline, begin once the lessee is notified that they're entitled to a refund? The lessee would, yes, and then the lessee would typically make a demand, and then that would trigger a process, right? ONRR would either agree with the demand and offer to make a payment or a credit. If there was a dispute, it would trigger, you know, 30 days for an appeal. The administrative appeal process would run at the end of the appeal period. So the date of the refusal, it has to be a request, is I'm hearing you, and the date of the refusal of such a request is the date that the claim for liability accrues under the statute. Is that correct? No, under the statute, the claim accrues upon the fixing of liability, right? So that is at the overpayment date, but the statute provides its own internal seven-year limitations, right? So there's plenty of time thereafter for the parties to work out how much money is owed, and then there was also a statutory system for tolling agreements of that administrative scheme that would then push the claim accrual date back further. So as long as the actual payment, the correct payment that is being dealt with is finalized, then the time does not begin to run until that time. Under the administrative scheme, and BP takes issue with whether the administrative scheme is applied, right, but under the administrative scheme, that seven years that the statute provides for in 1724H began to run from the overpayment, when the overpayments were made, that's between 2004 and 2008. Now there was a subsequent audit, the parties entered a series of tolling agreements, right? So that seven years didn't simply run from each month in 2004 to 2008, to seven years later, there were starts and stops along the way. But regardless of exactly when this court would find that the claim accrued, at the latest, it accrued in June 2016, which was that sort of final demand from ONRR that the overpayment interest that the agency had paid out be recouped, right? And it's indisputable based on the record that as of that June 2016 date, there was no timely administrative appeal. There was no process initiated within 30 days, there was no winding its way through that administrative process, there was no final agency action from that point, which is why in our briefs, we've argued that, you know, BP's claim fails for multiple reasons, but it did not exhaust its administrative remedies. But even if, even if there wasn't, that's the part of the question, right? I mean, the statute clearly worked out all those administrative remedies, and the only issue is whether or not the savings provision that you point to would have required them to go to the ONRR, notwithstanding that the ONRR said, you can't come to us because we're closed. The administrative appeals process, which applies more broadly than overpayment interest claims, has always existed and continues to exist, and exists despite the FAST Act. All the FAST Act did was amend FAGRMA by striking out 1721H. 1721H contained the right to overpayment interest, the manner of satisfaction, payment for credit, the rate for interest, how the interest would be calculated, and the fact that the burden of that recouping of interest would be shared with the states. That's all the FAST Act did. You don't think that it removes the source of funding, the appropriations to the agency to pay that amount? No, because in this context, and the Supreme Court's De La Rama case talks about this, the right to interest appears in 1721H, part and parcel with the manner of its satisfaction, payment or credit, which also appears in 1721H. So the FAST Act, in repealing 1721H, either repealed it all or kept it alive. The provisions stand or fall together. They're within the same section. There's no principle basis. I don't understand what provision, it's me, but what provisions, you're saying provisions in plural, what two provisions are you saying stand or fall together? The provisions of the statute, 1721H. It's just that 1721H contains multiple statements, right? Can I just ask you, as an aside, a follow-up to Judge Sell's question? Under the former statute, which was repealed, you go to district court. How do you go to district court for the monetary relief here? I mean, isn't it court of claims? What could the district court do in this circumstance? The district court would review a final agency action. If that agency action was erroneous, if the district court were to find it was erroneous, it can declare it unlawful, right? It can send the parties back. But it can't award damages, right? Probably not, but this court doesn't need to get there because it's untimely either way, right? It's untimely if the administrative process applied, the seven years has long since expired and expired long before. You're just saying you don't say. Just to make sure I understand, you're saying it doesn't matter whether they could have received any money through the district court process because they didn't even try? Is that what you're saying? No. Well, right. They can't receive anything from the district court because they never exhausted their administrative remedies. But I think the question from Judge Reyna was if, if I understand this correctly, if there is residual Tucker Act jurisdiction, you know, the option is going to district court or a court of federal claims, could the parties have gotten money from the district court? And my point is that this court doesn't need to resolve that issue because if it finds that the administrative exhaustion requirements continue to apply, 1724H, which was unaffected by the repeal, they are, they have never exhausted, they don't belong in district court. How can that help? Let's talk a little bit about the administrative remedies and talk about the exhaustion. It seems to me that there's a viable argument that seeking to resolve this through the administrative processes would have been an act of futility, would have been futile. Can you respond to that? Yes, your honor. So we have submitted that would be pure speculation that it would be futile. Administrative processes exist for a reason, right? They, they give higher level decision makers at the agency the chance to reconsider an initial decision. It would have given the parties a chance to crystallize, you know, what was owed, when it was owed. The government's position is that the agency had no, no authority anymore. That there was no, there was no funds, and plus there was no authority to, to award or to reimburse the, the, the funds. So why would not, and you're arguing that, no, that the process would not have been futile. The process would not have been futile because there was a chance that the higher level decision makers at the Department of Interior would determine that that initial decision was wrong, right? There, there was 1721 pursuant to the general... But they couldn't have done anything about it. Yes, they could have because if the right to interest survives for pre, pre-repeal liabilities, so does the manner to pay for it because they are part and parcel of a single comprehensive What is your support for that allegation given that 1721H was removed in its entirety? This is not a, it's not a takings case, it's a statutory benefit case. So if the right exists, right, and I think we can all say that, that under the right conditions the right exists, it exists because 1721H, the pre-repeal version, survives the FAST Act for purposes of that liability, right? That's the only place the, the, the right can come from. It has to come from FAGRA. If 1721H survives, so does the rest of the clauses in 1721H. I understand your logic, but do you have cases or statutory support for that? Yes. So the De La Rama case, which is a Supreme Court case at pages 389 to 90, talks about how the general savings statute kicks in in these circumstances to provide a rule of statutory construction. When, as here, a statute, and this is the Supreme Court quote, creates rights and also prescribes how the rights are vindicated, the substantive and procedural provisions are not discrete categories. They are fused components of an expression of policy. Here, in 1721H pre-repeal, there is both the right to interest, the manner it's calculated, and how it is satisfied. It's satisfied from current receipts in ONRR's program, either by payment or credit against another less underpayment. So there's no appropriations issue in that context. The De La Rama case talks at length about how you can't divorce a liability provision from its larger statutory scheme. If the liability provision survives, so does the scheme in which Congress created it. Are you sure about that? You're suggesting they can just, because they're, it's money that they can just move around the funds. I mean, I was a bureaucrat for a long time, and there's something called the Agency Deficiency Act, which we think about every day. It seems to me there could be, if that were the case, and you didn't need appropriations, you don't have appropriations, you can start funneling the money back and forth. That doesn't seem to me like the right course that one would follow in the normal scheme of things. So all the Administrative Deficiency Act says is that agencies are forbidden from spending money in excess of an appropriation for an unlawful purpose. That is not what Interior would be doing here, right? If 1721H survives for interest liability, so does its authority to pay. It's using it. So you're saying that Interior is, to date, as far as I know, getting millions of dollars. So ONRR can be using current receipts to pay off these final things, really? Yes, that's what 1721H says. It says there is a right to overpayment interest, and that right shall be vindicated or satisfied by payment from current receipts or a credit against the lessee's underpayment of royalties in some other month. And that pot of money, that was current receipts, are always going to be divorced in time from the original accrual of the interest rate, right? Because we have this long seven-year process, there's an interim audit, there's an interchange of ideas. If that's the case, then why didn't you pay them? Why don't you pay them now? They never appealed. They slept on their rights. He slept on his rights. Well, they didn't exactly sleep on their rights. They went to ONRR, and our ONRR told them, no, you can't come here. We're out of business. So you're saying they should have appealed to the government. Once the government tells them we're out of business because Congress repealed the statute, they should have appealed to the next level of government, as opposed to taking them at their word, looking at the situation, saying, yes, that makes sense, and going to the Court of Federal Claims, where there's no dispute that the money is owed them, right? There's never been any dispute that the money is owed them, right? It's owed them within the context of the statute. They slept on their rights. Lots of people, you know, get injured. Well, it's not outside of the context of the statute. They went to the Court of Federal Claims, and they're using the judgment fund, which is the way it works for 99% of the state. So it's, I'm not suggesting that the government doesn't have to be a great steward of making sure that people use the right boxes and the right avenues of relief. This one just seems a little odd. To respond to your honor, I'm conscious of my time, and to respond to your honor's concern here. If the court were to find that the administrative regime did not apply, right? The right to interest survived, but not the administrative scheme for its remedy, such that there was Tucker Act jurisdiction. BP's claim is untimely. If the administrative scheme does not apply, you have to go back to original principles of claim accrual. That's 2004 to 2008. They waited until 2018 to file in the Court of Federal Claims. They cannot avail themselves. The statute was repealed in 2015. They're going to the Court of Federal Claims because the statute has been repealed, and this is the way they seek relief of their claim, right? That would be some form of a takings claim. That is not this case. This case is a claim for statute. Are you saying that if we were to find against you with respect to the No, they are. Well, we would have rights to appeal. I don't know what the government will do. We haven't gotten a court's decision. We would comply with the court's decision. I can say that. But the BP cannot take advantage of the parts of the administrative scheme that help it and not the parts that hurt. So if the Tucker Act applies and the administrative scheme does not, the claims accrued 2004 to 2008. Isn't that futile? I mean, you're asking them to go to an agency that has already denied them. They did not go to the agency, ask, and get denied. They received a dear payor letter and then a letter that money was due back to the agency, and they paid the money they were told. Weren't they told, we can't pay you because we no longer have money and we no longer have authority? Right, and if they believed that they had an interest right, regardless of that communication, then they had an obligation to timely file suit, and they didn't. Or to timely appeal, which they didn't. Administratively appeal, which they didn't. This is not a mom-and-pop shop. This is a sophisticated organization. Its affiliate, the BP Exploration case, which was also done before the Court of Federal Claims, BP Exploration was in an administrative appeal process after the FAST Act. Well, at most, they may have made a mistake. It's not because there's no other advantage to them to going this way as opposed to the other way. We all agree they were owed the money. So, they weren't playing fast and loose. Maybe they made a mistake, but at most, it was that. Yes, maybe so. But the Supreme Court is well established that a party's ignorance of their rights or their miscalculation of their rights does not forgive a limitation. Okay, we're way beyond time, so we'll reserve a couple minutes for rebuttal. Let's hear from the other side. Thank you. Good morning, Your Honors. James Auslander for BP. May it please the Court, we submit that this is a straightforward case. I think the line of questioning is asking the question, what was BP supposed to do that it didn't do in this case? It's undisputed, as Your Honor stated, that the United States owes BP money for its interest on overpayment of royalties. There's no dispute that the royalty overpayments occurred. There's no dispute the overpayment interest accrued, and there's no dispute that the debt remains outstanding. So, what is the date where your argument is that your liability accrued? BP's claim accrued, as the District Court said, in December 2015 when the FAST Act removed the agency's authority and source of funds to pay the money to BP, and that's rendered the Judgment Fund the only available avenue to do so. Why wouldn't they have accrued at least when ONRR told you you couldn't get the money that you owe? Or that was afterwards? That was after, I'm sorry. Withdrawal. Sure. Sure, Your Honor. The United States knows precisely how much money is owed here. Again, it's $1 million, about $1.3 million. The United States doesn't want to pay BP, and that's understandable. But again, to be clear, this claim arises only from the FAST Act. It arises from an act of Congress, not from any administrative action by ONRR. You heard the other side, and you've read their brief. They say there's some sort of continuing appropriation that would allow those funds to be used, that they're still open for business and processing. Why wouldn't it have been the most reasonable for you to pursue that avenue if it finally ended up at the end of the day and at the steps of the former act that they said, we're out of business and we can't pay you, could have gone to the Court of Federal Claims then? Why didn't you at least try to exhaust the existing thing, which would have avoided our being here in this food fight today? Sure. Several reasons, Your Honor. But we would have not been here today at all if it were for the FAST Act. BP submitted its demand, it submitted its resubmission of the overpayment interest, overpayment principle. It got back its overpayment principle. It's undisputed that that submission for the overpayment principle also constituted the claim for the overpayment interest. And BP actually got some of that interest back after the FAST Act. The agency gave it back erroneously. And then in June 2016 said, actually, we didn't have any authority or money to give it to you. We actually need it back. BP looked at the unambiguous FAST Act, found that the honor was correct, and paid back the money and brought this case here. There is no case, general savings... If you had not paid back the money, how do you think things would have turned out? What would have been the government's recourse in that circumstance? There would have been an enforcement action, Your Honor, and BP may have been liable for civil penalties for failure to comply with an order. That's 1791. So your options then were, okay, so you didn't feel like you had the option to pay, whether or not to pay the money back. But why didn't you take it up the chain of the now repealed statutory proceedings to try to get your relief? Sure, and there's agreement on all parties, Your Honor. Now, again, I want to be clear that BP's claim is not premised on anything the agency did. Anything that happened administratively after the FAST Act is not material to the claim. However, it's very telling that everything that Honor did and said, including to BP as well as to the entire industry, announced the same interpretation. The first time the government posited that it may have authority or we should try to persuade it was in 2019, five years later, on summary judgment. It wasn't even in their motion to dismiss. It was in summary judgment at the first time that they ever announced this position. So it's introducing ambiguity when none exists. I believe that the statute is very clear. It takes away the checkbook, but it doesn't take away the liability. And that's what the judgment fund is for, and I believe the district court probably said it best, better than I could say, Your Honor. Because the liability all accrued long before the statute was repealed. Yes, Your Honor. There's no dispute at all that the liability remained. That was an issue on motion to dismiss. The government reserved its position on that. Then on summary judgment, the government came forward and said, yes, it is not retroactive. Yes, the liability is preserved. However, under this new theory of the general savings statute, we can pay you and you should have come to us a year ago or five years ago. I also just want to point out, because I think, Judge Rana, your question was about the endgame here. And the endgame is, again, this is not argued in the appellate briefs, but it was argued clearly to the district court. The government believes that under the FAGRMA administrative scheme, that after you have finished your administrative appeals, and that could take four or five years, the Interior Board of Land Appeals is taking about two, three years to issue decisions right now. At the end of that process, you go to federal district court because FAGRMA says the Administrative Procedure Act is the standard of review. And so they view that as requiring you to go to district court. Well, the Federal Circuit, the 10th Circuit Court of Appeals have said, I'm sorry, the DC Circuit and the 10th Circuit Court of Appeals have said, you can't come here for the money. You have to go to the Federal Court of Claims. So at the end of this diversion that the government wants us to do this empty administrative appeal, we end up in a court where we can't do anything. And their brief says, well, they would have done what they did administratively. Well, so that was a statutory scheme. So before they repealed the statute, how did that statutory scheme make any sense if it didn't provide a venue for relief, a forum for relief at the end of the day? Well, Your Honor, that's because these claims didn't exist before the FAST Act. Again, BP is not arguing that before the FAST Act, it had a right to come to this court. And that's why any suggestion that we should have come here in 2012 kind of makes no sense. BP submitted its overpayment interest principle demand. It got the right to also get the overpayment interest. If it had a dispute with the agency about how much principle was owed, they had a dispute about whether the tolling was in place. If it had a question about co-lessees or who paid what and when, those would be issues for the agency. We'd have to appeal that through the administrative process. And then ultimately, there would be a decision and the agency would have to comply with that decision. So that is how it works. That is how it proceeds. And we don't dispute that. Even today, that's how it should proceed. In a BP exploration case, that's exactly what happened. There was a dispute about the principle. There was a dispute about the tolling, whether it was bilateral or was this overpayment interest claim. And so they did go to administrative appeal because they had to. And if that was our situation, we would have done the same thing. But this is a clear removal of the authority and money. There's no case that says that after Congress strikes the authority and funds that the agency somehow has the ability to keep paying or crediting that interest. Completely agree with the panel's views on that. And that would be making new law here. Anything further? I have nothing further, Your Honor. Thank you. We exhausted your time, but we'll give you two minutes of rebuttal. Thank you, Your Honor. Just very, very briefly, BP is confusing their cause of action here. The trial court, this court, needs to be aware. BP sued under two legal theories, breach of contract and statutory benefit. It has never alleged a takings claim. All of its arguments hinge on the idea of some sort of taking, right? We had a right. And only, to quote my opposing counsel, the only statute at issue here is the FAST Act, because the FAST Act took away our right. This is not a takings case. This is a statutory benefit case. Where is the waiver of sovereign immunity? It's in FAGRMA. If the right exists, it exists because some part of FAGRMA survived the FAST Act. Well, what survived? And we would submit, based on De La Rama, you cannot parse the individual clauses in Section 1721H. If the right in Section 1721H survived, so, too, did the Congress that explicitly in the Act said, we're repealing the whole thing, including all of the procedures that went with it. All gone. No more funding for any of those. What would have been their recourse then? I think, if that's what it said, right? The whole thing is gone, and it still did not address retroactivity, well, then it would survive for purposes of the pre-repeal accrued rights. And then they could seek those at the Court of Claims, as they did here, right? That would be the only avenue which they could seek relief. No, because 1724, all the FAST Act did was strike 1721. 1724 has always existed and has continued uninterrupted, regardless of the FAST Act. 1724 is where the administrative regime is, right? If you have a dispute with any order or decision of the Secretary, you must follow this administration. Okay, what if, hypothetically, the Congress had repealed the statute and said, and you can't use 724, whatever that other citation is, for purposes of processing your claims under this now-repealed provision? It would depend on whether or not Congress spoke with respect to pre-repeal accrued rights, right? It's well established that repeals by implication are disfavored, right? So you'd be looking at statutory intent. Is there any evidence in the statute's repeal or in the legislative history as to whether or not Congress intended this to have retroactive effect? If not, if the statute is silent as it was here, we have the General Savings Statute. Congress has spoken with 1 U.S.C. 109. Okay, thank you. We thank both sides and the case is submitted.